Joyce WHEELER,
Plaintiff/Counterclaim Defendant/
Appellant,

v.

McDONNELL DOUGLAS CORPORATION, and General American Life Insurance Company, Defendants/Interpleaders, and Robert P. Jones and Sarah E. Jones, Defendants/Counterclaimants/ Respondents.

No. 74848.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 3, 1999.

Christine F. Hart, Christine F. Hart, P.C., St. Louis, for appellant.

John G. Enright, Kortenhof & Ely, St. Louis, for interpleaders.

Lawrence J. Altman, Chesterfield, for respondents.

KATHIANNE KNAUP CRANE, Judge.

This case involves competing claims to life insurance policy and retirement plan benefits. The deceased insured's children claim that they are entitled to all of the benefits under two of insured's policies (and his retirement plan which incorporated one policy's beneficiary designation) because, in his marriage dissolution settlement agreement, insured agreed to maintain insurance for the children as beneficiaries until they were emancipated. Plaintiff, insured's girlfriend at the time of his death, claims she is entitled to one-third of the benefits under a General American policy (and the retirement plan which incorporated that policy's beneficiary designation) and two-thirds of the benefits under an Armed Forces policy because insured so designated her as a beneficiary after the dissolution of his marriage. On cross-motions for summary judgment, the trial court awarded all of the benefits under both policies and the retirement plan to the children. Plaintiff appeals.

We affirm the judgment with respect to the General American policy and the retirement plan because the settlement agreement required that insured maintain the General American policy for the children as beneficiaries which gave them a vested equitable interest in benefits existing and reasonably flowing from natural increases in that policy. As beneficiaries of that policy, the children are also beneficiaries of the retirement plan. We reverse with respect to the Armed Forces policy because, at the time insured added plaintiff to the policy as a two-thirds beneficiary, he added $100,000 in coverage to the existing $50,000 coverage and the settlement agreement did not apply to this extraordinary post-dissolution purchase of increased coverage.

## FACTUAL BACKGROUND

Prior to filing cross-motions for summary judgment, plaintiff, Joyce Wheeler, and defendants, Robert Jones and Sarah Jones (hereinafter together referred to as "the children"), stipulated to and/or admitted the facts which follow. James Jones (hereinafter "insured") and Constance Jones had two children, defendant Sarah Jones, born on May 2, 1977, and defendant Robert Jones, born on June 2, 1980. Insured and Constance Jones were divorced on September 15, 1993. In his Statement of Property filed with the dissolution court, insured stated that he was insured under the following four life insurance policies in the designated amounts:

| McDonnell Douglas Furnished | $62,000 |
| Boston Mutual Life 8982 | $10,000 |
| Servicemen's Group Life insurance | $200,000 |
| Armed Forces Relief and Benefit 358452 | $60,000 |

The dissolution decree adopted and incorporated the Jones's settlement agreement (hereinafter "the settlement agreement") which contained the following provision:

> LIFE INSURANCE : It is agreed by and between the parties that [James Jones] shall maintain the following through McDonnell Douglas, Servicemen's Group Life, Armed Forces Relief and Benefit, Boston Mutual a[sic] policies of life insurance on his life with the parties['] minor children named as beneficiaries thereof or in trust for their health, education and welfare until such time as said children are emancipated. Upon a request of [Constance Jones] no more than once a year [James Jones] shall show proof of insurance.

Pursuant to the settlement agreement, insured designated his children as equal beneficiaries under a General American group life insurance policy (hereinafter "General American policy") provided to him through his employer, McDonnell Douglas. The General American policy provided double indemnity in case of death by accident. Also pursuant to the settlement agreement, insured acquired a $50,000 life insurance policy issued by the Armed Forces Benefit Association (hereinafter "AFBA policy") and designated his children as equal beneficiaries. Correspondence between insured and AFBA attached to plaintiff's motion for summary judgment suggests that, at the time he purchased this new policy with AFBA, he terminated an existing AFBA "group term policy". All parties agree that the children are the proper beneficiaries of this $50,000 of AFBA insurance.[1]

In March, 1993 insured and plaintiff began dating. They later began living together and made plans to purchase a home. They signed a sales contract and,

in June, 1996, took ownership of a home in St. Charles, Missouri as joint tenants with rights of survivorship. On July 26, 1996 insured purchased an additional $100,000 of life insurance on his then existing AFBA policy and added plaintiff as a two-thirds beneficiary under the policy. In July, 1996 insured added plaintiff as a one-third beneficiary under his General American policy.

Through his employment at McDonnell Douglas, insured had a savings plan, a Payroll Stock Ownership Plan (PAYSOP), and a retirement income plan. Insured designated Robert Jones, Sarah Jones, and plaintiff as one-third beneficiaries under his savings plan and PAYSOP, but he did not designate a beneficiary of his retirement income plan. McDonnell Douglas had a policy and practice that, in the absence of designated beneficiaries, whomever is determined to be the beneficiaries of the employee's basic life insurance policy would become beneficiaries of the retirement income plan. Insured's basic life insurance policy was the General American policy.

On August 31, 1996 insured died as the result of injuries he suffered in an automobile accident. AFBA paid the children each one-sixth of the policy benefits and paid plaintiff $99,900, representing two-thirds of the policy benefits. Plaintiff made claims on General American for payment of proceeds due to her as a one-third beneficiary of insured's General American policy and on McDonnell Douglas for payment of proceeds due to her as a one-third beneficiary of insured's retirement income plan, savings plan and PAYSOP. Both General American and McDonnell Douglas refused payment until the dispute created by the children's competing claims was judicially resolved.

### PROCEDURAL BACKGROUND

On April 25, 1997 plaintiff filed an action against McDonnell Douglas, General

---

1. No stipulations or admissions were made with respect to the Servicemen's Group Life Insurance (SGLI) and Boston Mutual Policies which were not in dispute in this case.

American, and the children seeking a declaration of her right to receive one-third of the benefits under insured's General American policy, savings plan, PAYSOP and retirement income plan. The children answered and filed a two-count counterclaim against McDonnell Douglas, General American, and plaintiff. In Count I, they sought a declaration of their rights, obligations and liabilities under insured's life insurance policies and employee retirement benefits. In Count II, they requested that the court establish a constructive trust on the $99,900 and interest paid to plaintiff as a two-thirds beneficiary under insured's AFBA policy.

General American and McDonnell Douglas filed answers, cross-claims and counterclaims for interpleader. General American deposited $159,106 into the court registry for the beneficiaries of insured's General American policy. McDonnell Douglas deposited $62,929.47, representing the proceeds of the retirement income plan, $142,-942.55, representing the proceeds of the savings plan, and $5,197.37, representing the proceeds of the PAYSOP, with the court registry for the beneficiaries of insured's retirement funds.

Plaintiff and the children each filed cross-motions for summary judgment. The trial court granted the children's motion and awarded the children all proceeds payable under insured's General American policy and retirement income plan. The court also awarded the children $148,-139.92, representing a two-thirds share of insured's savings plan and PAYSOP, and awarded plaintiff $49,379.00, representing

a one-third interest in insured's savings plan and PAYSOP. The court established a constructive trust on the $99,900.00 plus interest in AFBA policy proceeds paid to plaintiff and entered judgment for the children in that amount.

On appeal plaintiff challenges the trial court's award of all of the proceeds of the General American policy, the retirement income plan and the AFBA policy to the children.

## DISCUSSION

I. *Applicability of Probate Code/Plaintiff's Entitlement to All Proceeds*

■ For her first point plaintiff contends that the trial court erred as a matter of law in entering summary judgment in the children's favor because A) their counterclaim was not filed in compliance with Section 473.444.1 and B) plaintiff was entitled as a valid third party beneficiary to all of the proceeds on which she was a designated beneficiary.[2]

A. *Application of Section 473.444.1 to the Children's Counterclaim*

■ Plaintiff contends that the trial court erred in entering summary judgment on the children's counterclaim for declaratory judgment and constructive trust because those claims were founded on contract and were not brought in probate court and against the estate within the time limits set out in Section 473.444.1. Although this issue was not presented to the trial court, the issue of whether there

---

2. The contention that the "trial court erred in entering summary judgment" for multiple unrelated reasons is not a proper point relied on under Rule 84.04(d). The error contemplated by Rule 84.04(d) in a court-tried case is not the judgment itself but the trial court's actions or rulings on which the adverse judgment is based, such as explicitly or implicitly making or failing to make a certain factual finding, applying or failing to apply a particular rule of law, taking or failing to take a certain procedural action, etc. *See Thummel v. King,* 570 S.W.2d 679, 685–688 (Mo. banc 1978). When an appellant makes the entire judgment

one error and lists multiple grounds therefor, the result is that the point contains multiple legal issues. Separate issues should be stated in separate points relied on. *Id.;* In *Interest of A.H.,* 963 S.W.2d 374, 379 (Mo.App.1998); *Campbell v. Rickert,* 938 S.W.2d 282, 285 (Mo.App.1997); *Chancellor Development Co. v. Brand,* 896 S.W.2d 672, 674 (Mo.App. 1995); *Wulfing v. Kansas City Southern Indus., Inc.,* 842 S.W.2d 133, 145 (Mo.App. 1992). Although we do not condone the form of this point relied on, we will gratuitously address the arguments raised in this point in order to render a decision on the merits.

has been a failure to join a necessary or indispensable party under Rule 52.04 is fundamental and jurisdictional and can be raised at any time, even on appeal. Rule 55.27(g)(2); *Obaidullah v. Kabir*, 882 S.W.2d 229, 230–31 (Mo.App.1994).

Plaintiff argues that, under *Welch v. McReynolds*, 928 S.W.2d 433 (Mo.App. 1996), the children were required to bring their counterclaim against insured's estate in probate court pursuant to Section 473.444.1 and that they failed to do so. Section 473.444.1 provides as follows:

> **473.444. Limitations on filing claims—when claims barred.**—1. Unless otherwise barred by law, all claims against the estate of a deceased person, other than costs and expenses of administration, exempt property, family allowance, homestead allowance, claims of the United States and claims of any taxing authority within the United States, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, which are not filed in the probate division, or are not paid by the personal representative, shall become unenforceable and shall be forever barred against the estate, the personal representative, the heirs, devisees and legatees of the decedent one year following the date of the decedent's death, whether or not administration of the decedent's estate is had or commenced within such one-year period and whether or not during such period a claimant has been given any notice, actual or constructive, of the decedent's death or of the need to file a claim in any court. No contingent claim based on any warranty made in connection with the conveyance of real estate is barred under this section.

In *Welch*, the plaintiff's father had entered into a marital settlement agreement which required him to maintain insurance on the plaintiff's mother for the plaintiff's benefit. The plaintiff's father died and proceeds of the life insurance on his life, his real and personal property, and buy-out monies due under his partnership were distributed to his widow. The plaintiff filed suit "as sole surviving child and heir" of her father against the widow and father's partner to reform the marital settlement agreement to cover insurance on her father's life, to declare her rights as heir to all of her father's assets, insurance, and the partnership, and to recover the insurance proceeds under a theory of unjust enrichment. The trial court dismissed the petition.

*Welch* is inapplicable. The plaintiff in that case was suing to recover assets as her father's heir. The plaintiff was not a named beneficiary of any of the life insurance proceeds she sought to recover from the defendants and the language of the plaintiff's parents' marital settlement agreement did not require the plaintiff's father to maintain insurance on his life for her benefit. Under these facts the *Welch* court affirmed dismissal of all three counts of the petition because they were brought against the wrong party and stated no cause of action upon which relief could be granted. The court further held that the proper defendant was decedent's estate and that any claims against the estate were time barred under Section 473.444.1.

The children in this action are not making claims to insured's assets as his heirs. In Count I of their counterclaim, the children sought a declaration of their rights to receive proceeds under insured's General American policy. Their petition asked the court to make the same type of declaration that plaintiff prayed for in her petition. Under Section 527.010 RSMo (1994) of the Declaratory Judgment Act, trial courts have the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

In Count II, the children requested that the court establish a constructive trust on the AFBA proceeds paid to plaintiff. Those insurance proceeds were not subject to probate. *See* Section 461.001 RSMo (Cum.Supp.1998); *Hollis v. Estate of Hollis*, 845 S.W.2d 156, 159 (Mo.App.1993).

Therefore, the children's claims were not "claims against the estate of a deceased person" within the meaning of Section 473.444.1. The children's claims were not based on an alleged breach of the marital settlement agreement but were based on a vested equitable interest in the proceeds designated for their benefit. The children did not file their counterclaims against the wrong party in the wrong court. This portion of point one is denied.

B. *Validity of Insured's Designation of Plaintiff as a Beneficiary Under the General American Policy and the AFBA Policy*

Plaintiff next argues that she has satisfied all of the elements necessary for a valid declaratory judgment action and that, as a third party beneficiary, she can sue to enforce the terms of the insurance policies in which she was named as a beneficiary. The children counter that, as beneficiaries of a contract obligating the insured to maintain present policies for their benefit, they have a superior right to the proceeds, citing *General American Life Ins. Co. v. Rogers*, 539 S.W.2d 693 (Mo.App.1976).

■ In determining the applicability of the settlement agreement to insured's policies, we must determine insured's and his former wife's intent as expressed in the settlement agreement. The interpretation of a settlement agreement is governed by the same principles which apply to any contractual agreement, and the primary rule of construction is that the parties' intention shall govern. *Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. banc 1993). We resolve any question regarding the scope and extent of the agreement from the parties' intent, which is to be resolved in light of all the facts and circumstances surrounding the settlement. *Id.* However, we give language which is plain and unambiguous on its face full effect within the context of the agreement as a whole. *Id.*

1. *Application to the General American Policy and Retirement Income Plan Benefits*

■ The General American policy provided by insured's employer McDonnell Douglas was one of the policies insured agreed to maintain with the children named as beneficiaries thereof in the settlement agreement. After dissolution, insured added plaintiff as a one-third beneficiary of this policy. There was no evidence that insured made any extraordinary purchases of additional coverage. The policy was in the amount of $62,000 at the time of the dissolution and increased to $79,553 at the time of insured's death which resulted in the $159,106 double indemnity payment deposited with the court.

■ The settlement agreement clearly and unambiguously shows that insured and his former wife intended that the life insurance policies identified in the agreement were to be maintained for the benefit of the children until their emancipation. "[T]he law in Missouri and elsewhere is clear that a contract obligating the insured to maintain a present policy in full force and effect for the benefit of certain beneficiaries named pursuant to an agreement is valid and that the beneficiaries so named acquire a right in the proceeds of the policy which will be protected against subsequently named beneficiaries who have no superior right." *Rogers*, 539 S.W.2d at 697; *see also Perry v. Perry*, 484 S.W.2d 257, 258 (Mo.1972); *Prudential Insurance Co. of America v. Gibson*, 421 S.W.2d 26, 33–34 (Mo.App.1967). The vested equitable interest may not be subsequently defeated by an attempt to change the beneficiary without the contracting first beneficiary's consent. *Prudential*, 421 S.W.2d at 33. Insured's agreement to maintain the specified policies with the children as beneficiaries until the children's emancipation made the children irrevocable beneficiaries until emancipation and gave them a vested equitable interest in the proceeds of insured's General American policy that could not be defeated by insured's subsequent attempt to add plaintiff as a beneficiary. *See Rog-*

*ers,* 539 S.W.2d at 697, and cases and authorities cited therein.

■ Because the children were the sole legal beneficiaries of the General American policy, they were also entitled to the benefits accruing under insured's retirement income plan because the parties agreed in their pleadings that whomever is determined to be the beneficiaries of his General American policy are the beneficiaries of his retirement income plan.

The trial court did not err in entering summary judgment in the children's favor and awarding them all of the benefits on the General American policy and retirement income plan. This portion of point one is denied.

### 2. *Application to the AFBA Proceeds Paid to Plaintiff*

■ Insured's designation of plaintiff as a two-thirds beneficiary under the AFBA policy presents a significantly different situation from the designation under the General American policy because after his divorce insured purchased an additional $100,000 in life insurance coverage, representing a two-thirds increase in coverage, at the same time he named plaintiff a two-thirds beneficiary. The parties have not directed us to a Missouri case which addresses the issue of the application of a settlement agreement to insurance coverage purchased after dissolution. The children suggest that *Rogers* applies to this situation because we should assume that the unexplained increased value of the group policy in *Rogers* from $4,500 to $30,000 was due to the purchase of additional coverage. We disagree. The *Rogers* opinion states: "Over the years the policy increased in value," 539 S.W.2d at 694, and "[t]he policy was issued in 1953, there were multiple increases thereafter." *Id.* at 698. This language does not imply that there was an extraordinary purchase of additional insurance and nothing in the

legal discussion indicates that the opinion was meant to apply to such a situation.

Other jurisdictions which have considered post-dissolution acquisition of additional coverage agree that insurance beneficiaries named pursuant to a settlement agreement have no equitable interest in additional insurance purchased by the insured after the date of the dissolution where the words of the agreement in no way suggest they are to be named beneficiaries of insurance acquired subsequent to the divorce. *See In re Knazze,* 259 Ill. App.3d 410, 198 Ill.Dec. 103, 632 N.E.2d 162 (1994); *Allen v. Allen,* 226 Ill.App.3d 576, 168 Ill.Dec. 733, 589 N.E.2d 1133, 1135 (1992); *McWhite v. Equitable Life Assur. Society,* 141 Ill.App.3d 855, 96 Ill. Dec. 105, 490 N.E.2d 1310, 1318 (1986); *Dubois v. Smith,* 135 N.H. 50, 599 A.2d 493 (N.H.1991); *Holbert v. Holbert,* 720 S.W.2d 465 (Tenn.App.1986). However, where a spouse agrees to maintain children as beneficiaries of a policy, this rule does not apply to any natural increases in that policy or any substitute policy unless the words of the agreement specifically limit the amount. *Newton v. Newton,* 472 P.2d 718, 720 (Colo.App.1970); *In re Estate of Downey,* 293 Ill.App.3d 234, 227 Ill.Dec. 265, 687 N.E.2d 339, 342 (1997); *In re Schwass,* 126 Ill.App.3d 512, 81 Ill. Dec. 835, 467 N.E.2d 957, 962 (1984).[3]

The insurance clause in this case did not indicate that the children were to be named beneficiaries of new, non-replacement coverage obtained after dissolution. At the time of the dissolution, insured's AFBA policy provided for $50,000 in life insurance coverage. The additional $100,000 in AFBA coverage, purchased almost three years after dissolution, was not related to a natural increase tied to insured's salary or length of employment. Nor was the additional $100,000 in AFBA coverage intended to replace or substitute for other insurance in which the children may have had a vested equitable interest. The addi-

---

**3.** This rule is consistent with the result in *Rogers,* 539 S.W.2d at 698–99, in which the court awarded the beneficiary the policy increases.

tional coverage was the result of an extraordinary purchase by insured and was not contemplated in the life insurance provision in the settlement agreement.

The insurance clause in the settlement agreement gave the children a vested equitable interest only in benefits existing, or reasonably flowing from natural increases, in policies or replacement policies anticipated and intended in the settlement agreement, but did not give them a vested interest in the $100,000 in additional AFBA coverage insured purchased after dissolution for plaintiff's benefit. Accordingly, the trial court erred in entering judgment for the children in the amount of $99,900 plus interest and in establishing a constructive trust on the AFBA proceeds paid to plaintiff.

We consider plaintiff's remaining points of error as they affect the summary judgment in the children's favor with respect to the General American policy and the retirement plan.

## II. *Posthumous Support*

 For her second point plaintiff contends the trial court erred in entering summary judgment for the children because the settlement agreement was an unenforceable order for posthumous support. Plaintiff relies on *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 538 (Mo.App. 1981), in which the court held that a decree ordering that life insurance be maintained for the benefit of children is an order for posthumous child support which a trial court has no authority to enter. In this case the dissolution court did not order insured to name his children as beneficiaries of his life insurance policies but incorporated the settlement agreement in which insured voluntarily agreed to maintain the policies. Parties may bind themselves to obligations which the dissolution court lacks authority to impose. *Bushell v. Schepp*, 613 S.W.2d 689, 692 n. 1 (Mo.App. 1981). Even where the court has no pow-

er to order that life insurance be maintained, the parties may voluntarily agree to do so. *Downey*, 227 Ill.Dec. 265, 687 N.E.2d at 342. Point two is denied.

## III. *Ambiguity of Life Insurance Clause*

For her third point plaintiff contends the trial court erred in granting the children's motion for summary judgment because the life insurance clause in the settlement agreement was unenforceable due to the ambiguity. Plaintiff argues that there are six different possible interpretations of the life insurance clause and that these possibilities render the clause ambiguous and unenforceable.

The ambiguities and varying interpretations plaintiff assigns to the life insurance clause in the settlement agreement are not relevant to the issues to be decided in this case. Here, as set out in our discussion under point one, *supra*, the marital settlement agreement was unambiguous in expressing the parties' intent that insured maintain his General American and then-existing AFBA policies for his children's benefit. As we have held, the settlement agreement did not apply to the post-dissolution purchase of $100,000 in additional AFBA insurance. Point three is denied.

## IV. *Existence of Other Benefits/Federal Law*

 Under her fourth point plaintiff argues that the trial court erroneously granted the children's motion for summary judgment because 1) insured arranged for other benefits for the children in lieu of the policy proceeds on which he changed the beneficiary and 2) federal law prohibits the children's claims.[4] The fact that insured named his children as beneficiaries of his savings plan and PAYSOP did not relieve him of his obligation to maintain his children as sole beneficiaries of the life insurance provided for in the settlement agreement. Insurance proceeds payable pursuant to a settlement agreement are

4. *See supra* note 2.

not to be diminished simply because there may be a collateral source of support. *See Crozier v. Equitable Life Assur. Soc.*, 33 Wash.App. 828, 658 P.2d 39, 41 (1983) (overruled on other grounds). Plaintiff argues that the children cannot claim $200,000 in insured's SGLI benefits and that a constructive trust cannot be placed upon those funds. This argument is moot because insured's SGLI benefits were not a subject of the children's counterclaims. Further, federal law regarding an insured's beneficiary designation on an SGLI policy is irrelevant to any issue to be decided in this case. Plaintiff also argues that using the proceeds due to her under insured's savings plan and PAYSOP to satisfy the judgment against her regarding insured's AFBA benefits is prohibited under ERISA. Our determination that plaintiff was entitled to the proceeds paid to her by AFBA renders this argument moot. Point four is denied.

### V. *Both Parties' Requests for Attorney's Fees and Costs*

Plaintiff asks this court to award her attorney fees and costs connected with her appeal because the children took an unsupportable position in the circuit court. The children seek an award of attorney's fees under Rule 84.19 on the ground that plaintiff's appeal is frivolous. Both requests for attorney's fees are denied. Costs on appeal will be assessed one-half to plaintiff and one-half to the children.

### *Conclusion*

The judgment of the trial court in the children's favor with respect to the General American policy and retirement income plan is affirmed; the judgment in the children's favor with respect to the $99,900 plus interest in AFBA benefits and the constructive trust thereon is reversed.

PAUL J. SIMON, P.J. and LAWRENCE E. MOONEY, J., concur.